ELIAS BRYAN *et al. v.* ROBERT FAUCETT *et al.*

The identification of a lot of land described in the plan of a town only as lot No. 115, and not othewise described in the deed, is a question of fact for the jury.

Therefore it was competent to offer parol evidence to show that when lot No. 115 was sold, it was publicly announced by the crier of said sale as "The Store House lot," the plaintiff and defendant both being present.

It is competent to show that when lot No. 115 was sold, that the plaintiff being present, (who now claims said lot by virtue of a deed conveying to him a lot numbered as lot 116,) asked "who purchased lot 115?" When informed by witness that defendant purchased it, he replied, "I would have made it bring a great deal more, for it is worth a great deal more."

Civil action for the recovery of a lot of land, in the town of Haywood, tried before *Tourgee, J.* at Spring Term, 1871, of CHATHAM Superior Court.

The plaintiff introduced a deed from G. J. Williams, Sheriff of Chatham, conveying lot No. 116, situate in the town of Haywood, to plaintiff, the said lot having been sold under a *ven. ex.* as the property of Chesley Faucett. Also an act of incorporation of the town of Haywood, in 1832. A paper writing, purporting to be a plan of Haywood, was then offered in evidence, and Nathaniel Clegg testified that he was seventy-five years of age, was an old surveyor, had always resided in Chatham, and for about forty years near Haywood; that Archibald Corless, of said county, died in April, 1845, and he (Clegg) administered on his estate, and found this plat amongst his papers; that said Corless owned lots in said town of Haywood; that he ascertained the location of said lot by this plan, and that said location had never been disputed; that he had often surveyed many portions of said town to locate property situate therein for various persons, and amongst others, for the defendant, Scott; that he always used said plan in such surveys

without objection; that he has never seen any plan, purporting to be a plan of said town, differing from this, although he had seen others like this; that this plan of Haywood agrees with said town in regard to the river, streets, alleys, &c., and lots surveyed by him, excepting some slight particulars, caused by a variation of the compass, common to old surveys, and that he never heard the accuracy of said plan questioned except as to those variations, and that, mainly as applying to the boundary line of said town, which runs north and south. The defendant objected to said plan as evidence, but the Court admitted it.

The witness then stated that according to said plan, the lot in controversy on which Faucett's store house was located, was marked " 116." It was agreed that plaintiffs need not produce the judgments and executions against Chesley Faucett, under which the sale was made.

On cross examination the witness, Clegg, testified that the numbering of the lots in said plan began at the South-east corner, in Olin street, next to Deep River, and ran north-west to the limits of the town, and then back to Olin Street, and so throughout the entire plan, and that the numbering was from left to right, the former being the lowest number, and the latter the highest; that this was observed on all the lots thus pointing, except lots Nos. 115 and 116, in which case the left hand lot numbered the highest, whilst the lowest lot was the highest number, whereas if the order of running had been preserved, the left hand lot would have been numbered 115.

The defendants then introduced a deed from Thomas Ruffin, dated the 3d February, 1835, 'to Robert Faucett and Richardson Faucett, conveying lots No. 115 and 116. Also, a deed from Richardson Faucett to the defendant, Robert, conveying the aforesaid lots 115 and 116, executed May 10, 1845, in which the store house lot is called No. 115. Also, a deed from G. J. Williams, Sheriff of Chatham County, to defendant,

J. W. Scott, conveying lot No. 115 to defendant Scott, by virtue of a *ven. ex.* against Chesley Faucett, both parties claiming under him.

The defendant, Faucett, was examined, who testified that he was seventy-four years of age ; had resided in Haywood forty-four years ; that when he and Richardson Faucett, purchased lots Nos. 115 and 116, from Judge Ruffin, they were vacant lots, and that he built a store house shortly after said purchase, and that the lot has ever since been known as the storehouse lot. The defendants then prepared to prove by this witness that the plaintiffs and defendants were present at the sale of these lots in Pittsboro', by the Sheriff Williams,. and that when the Sheriff came to sell lots Nos. 115 and 116,. he made proclamation : "Now, I am going to sell you more valuable property. I offer for sale lot No. 115, *the store house lot.*" That said lot was purchased by the defendant, Scott. The plaintiffs objected to this evidence, but it was admitted by the Court.

The defendants then introduced John C. McClennahan, who testified, that immediately after lot No. 115 was sold to the defendant Scott, and whilst the sale of 116 was going on, the plaintiff, Elias Bryan, asked : "Who purchased No. 115 ?" Witness replied that " John W. Scott purchased it for a son of Robert Scott, who was to redeem it," to which plaintiff, Elias,. replied, " I would have made it bring a great deal more, for it. is worth a great deal more." This evidence was admitted by the Court, after objections from plaintiffs.

Verdict for defendant. Rule, &c. Judgment and appeal.

*B. I. Howze,* for plaintiffs.
*Manning,* for defendants.

PEARSON, C. J.    Lots Nos. 115 and 116, are two adjoining half acre lots in the town of Haywood. Bryan is the owner of lot No. 116, Scott is the owner of lot No. 115. There is a store house upon one of these lots; and the question is, on.

which lot does the store house stand; is it on lot No. 116, or lot No. 115? or in other words, is the lot on which the store house stands, lot No. 116 or lot No. 115?

The deed to the plaintiff conveys "lot No. 116 in the town of Haywood." No further description is given. If at the time the town was laid off and the lots numbered, a post or some other monument, with the number marked on it, had been erected, or if an accurate map of the town, with the lots numbered in regular order, had been made by public authority and duly authenticated and preserved, there would have been no difficulty " in fitting the description, (short as it is) to the thing." But neither of these modes of identification, seems to have been adopted, and the plaintiff is forced to resort to other evidence for the purpose of locating his lot. A plan of the town, (it does not appear by whom it was drawn) produced by Mr. Clegg, an old surveyor, was offered in evidence. The lot marked 116 on this plan, is the lot on which the store house stands, and the question depends upon the accuracy of the numbering.

Mr. Clegg says, and it is apparent from an inspection of the plan, that the order pursued in numbering the lots, is from left to right, the former being the lowest number, and the latter the highest; that this was observed throughout the entire plan, in all of the lots, except in respect to lots numbered 115 and 116; in which case the left hand lot instead of being the lowest is the highest number; while if the order of numbering had been preserved, the left hand lot would have been 115. The store house stands on the left hand lot; how or why this deviation from the order of numbering was made by the draughtsman is not explained, and the matter is left open to other proof, as to whether this reversal of the order has been recognized and adopted, so as to make the left hand lot to be lot No. 116, or whether the left hand lot has not been known and treated as being lot No. 115, notwithstanding it is marked on the plan produced by Mr. Clegg, "Lot No. 116." To this end, the defendant offered a deed executed in 1844 by Richardson to

Robert Faucett for those two "half acre lots, in the town of Haywood, one which is improved, known as the store house lot, and numbered one hundred and fifteen, (115) and the other known as lot number one hundred and sixteen (116.)"

The evidence was objected to, but admitted. We concur with his Honor. The evidence was so material to the inquiry before the jury, that it would be strange, if there were any rule of law to exclude it. If the parties to the deed were strangers, we would be inclined to consider the evidence admissible, on the principle by which hearsay evidence is received in questions of boundary. But, here, both parties claim under Faucett. That fact relieves the question from all difficulty.

We also concur with his Honor, that what the Sheriff said at the time he put up the lots for sale, was admissible as part of the *res gestœ*, and we can see no ground whatever, upon which the plaintiff could object to the admissibility of what he said himself in reference to the lots.

The objections made to the evidence, offered by the defendants, seems all to be referable to a misapprehension on the part of the plaintiffs' counsel, in regard to the ground on which it was admitted. He seemed to think that it was offered to contradict and vary the meaning of his deed, whereas no one denies that his deed conveys lot No. 116 ; and the difficulty grows out of a latent ambiguity, in regard to which is lot No. 116, and, which is lot No. 115. A question of identity, which is clearly assimilated to a question of boundary; in respect to which, every one concedes such evidence is admissible ; in fact, it is the only kind of proof by which such questions can ever be settled, and the truth arrived at.

There is no error.

PER CURIAM.                                  Judgment affirmed.